IN THE UNTIED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**Civil Action No.: 1:12-cv-03256-WJM-KLM**

ANDRE WALKER,

    Plaintiff,

v.

FITNESS QUEST, INC., a Delaware Corporation,
HEALTH INTERNATIONAL CORPORATION, a Florida corporation,
HSN, INC., a Delaware Corporation, HSN INTERACTIVE LLC, a Delaware Corporation, WALGREENS CO., an Illinois Corporation, MEIJER, INC., a Michigan Corporation, WAL-MART CANADA CORP./LA COMPAGNE WAL-MART DU CANADA, a Canadian N.S. Unlimited Liability Corporation, ROGERS BROADCASTING LIMITED DBA THE SHOPPING CHANNEL, and FINGERHUT COMPANIES, INC., a Minnesota Corporation,

    Defendants.

---

**AMENDED COMPLAINT AND JURY DEMAND**

---

Plaintiff, Andre Walker, By and through his attorney, David J. Furtado of Furtado Law PC, and for his Amended Complaint against Defendants Fitness Quest, Inc, Health International Corporation, HSN, Inc., HSN Interactive LLC, Walgreens Co., Meijer, Inc., Wal-Mart Canada Corp./LA Compagne Wal-Mart DU Canada, Rogers Broadcasting Limited dba The Shopping Channel, and Fingerhut Companies, Inc., states as follows:

## I.    PARTIES

1.    Plaintiff Andre Walker (referred hereafter as "Walker") is an individual with an address of 846 S. Chambers Road, Apartment S303, Aurora, Colorado 80017.

2. Defendant Fitness Quest, Inc. (referred hereafter as "Defendant Fitness") is a corporation duly organized and existing under the laws of the State of Delaware, having its principal place of business at 1400 Raff Road, SW, Canton, Ohio 44750. Defendant Fitness may be served by delivering a copy of the Summons and Complaint herein to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process.

3. Defendant Health International Corporation (referred hereafter as "Defendant Health International") is a corporation duly organized and existing under the laws of the State of Florida, having its principal place of business at 11880 28th Street North, St. Petersburg, FL 33716. Defendant Health International may be served by delivering a copy of the Summons and Complaint herein to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process. Alternatively, Defendant Health International may be served with process by servicing its registered agent Anthony A. Little at 11880 28th Street North, St. Petersburg, FL 33716.

4. Defendant HSN, Inc. (referred hereafter as "Defendant HSN") is a corporation duly organized and existing under the laws of The State of Delaware, having its principal place of business at 1 HSN Drive, St. Petersburg, FL  33729. Defendant HSN may be served by delivering a copy of the Summons and Complaint herein to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process. Alternatively, Defendant HSN may be served with process of servicing its registered agent, NRAI Services, Inc., at 2731 Executive Park Drive, Weston, FL  33331.

5. Defendant HSN Interactive, LLC (referred hereafter as "Defendant HSN Interactive") is a corporation duly organized and existing under the laws of the State of

Delaware, having its principal place of business at 1 HSN Drive, St. Petersburg, FL 33729. Defendant HSN Interactive may be served by delivering a copy of the Summons and Complaint herein to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process. Alternatively, Defendant HSN Interactive may be served with process by servicing its registered agent, NRAI Services, Inc., at 2731 Executive Park Drive, Weston, FL 33331.

6.      Defendant Walgreens Co. ("Defendant Walgreens") is a corporation duly organized and existing under the laws of The State of Illinois having its principal place of business at 300 Wilmot Road, MS #3301, Deerfield, IL 60015. Defendant Walgreens may be served by delivering a copy of the Summons and Complaint herein to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process. Alternatively, Defendant Walgreens may be served with process by servicing its registered agent, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833.

7.      Defendant Meijer, Inc. ("Defendant Meijer") is a corporation duly organized and existing under the laws of The State of Michigan having its principal place of business at 2929 Walker Avenue, NW, Grand Rapids, MI 49544. Defendant Meijer may be served by delivering a copy of the Summons and Complaint herein to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process. Alternatively, Defendant Meijer may be served with process by servicing its registered agent, The Corporation Company, 30600 Telegraph Road, Ste. 2345, Bingham Farms, MI 48025.

8.      Defendant Fingerhut Companies, Inc. ("Defendant Fingerhut") is a corporation duly organized and existing under the laws of The State of Minnesota having its principal place of business at 6509 Flying Cloud Drive, Eden Prairie, MN 55344. Defendant Fingerhut may be

served by delivering a copy of the Summons and Complaint herein to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process. Alternatively, Defendant Fingerhut may be served with process by servicing its registered agent at 6509 Flying Cloud Drive, Eden Prairie, MN 55344.

9.      Defendant Wal-Mart Canada Corp./LA Compagne Wal-Mart DU Canada, a Canadian N.S. Unlimited Liability Corporation ("Defendant Wal-Mart") duly organized and existing under the laws of Canada having its principal place of business in Canada. Defendant Wal-Mart may be served by delivering a copy of the Summons and Complaint herein to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process. Alternatively, Defendant Wal-Mart may be served with process by servicing its registered agent Janie Angus, 1300-1969 Upper Water Street, Purdy's Wharf Tower II Halifax NS, Canada B3J 2R7.

10.     Defendant Rogers Broadcasting Limited dba The Shopping Channel ("Defendant Shopping Channel") duly organized and existing under the laws of Canada having its principal place of business in Canada. Defendant Shopping Channel may be served by delivering a copy of the Summons and Complaint herein to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process. Alternatively, Defendant Shopping Channel may be served with process by servicing its registered agent Catherine Douglas, 9th Floor, 333 Bloor Street East, Toronto, Ontario M4W 1G9.

## II.    **JURISDICTION AND VENUE**

11.     Walker's action arises under the patent laws of the United States of America as codified in 35 U.S.C. § 101 *et. seq.* for patent infringement. This Court has subject matter

jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, including 35 U.S.C. § 271 et seq.

12. Defendants are subject to personal jurisdiction in The United States District Court for The District of Colorado since they regularly conduct business within this judicial district, have had systematic and continuous contacts with this judicial district, have conducted activities related to Walker's claims within this judicial district, and have damaged Walker by their tortuous conduct in this judicial district.  Furthermore, this Court has personal jurisdiction over Defendants because Defendants have committed acts within Colorado and this judicial district, giving rise to this action, and Defendants have established minimum contacts with the forum such that the exercise of jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice.

13. Venue is proper in this district pursuant to 28 U.S.C. § 1391 and 28 U.S.C. § 1400(b) since Defendants are subject to personal jurisdiction within this judicial district and a portion of the events giving rise to Walker's claims and damages resulting therefrom occurred in this judicial district.  Furthermore, Defendants maintain an online presence via a website on the world wide web.  Defendants' website is interactive, and as such, Colorado residents can browse and purchase Defendants' products from within the State of Colorado.  Furthermore, Defendants broadcast television programming within the State of Colorado in order to sell products and services to Colorado residents.

14. Plaintiff's claim for patent infringement arises from Defendants' infringing activities in the State of Colorado and throughout the United States wherein Defendants' infringing activities have caused and are causing substantial harm to Plaintiff.

### III.     GENERAL ALLEGATIONS

15.     Walker had an idea whereby he would tone his abdominal muscles by repeated rotation of his upper body while keeping his lower body stationary. He added resistance in order to speed this process.

16.     In order to test his idea, Walker attached exercise bands to the ends of a broomstick, positioning the broomstick across the back of his neck, holding on to each end of the broomstick, stepping on the free ends of the exercise bands, and then rotating his upper body. He noticed that the next day his abdominal muscles were very sore and he realized that he could make a device that could be used to effectively exercise abdominal muscles.

17.     Walker also attempted using the initial broomstick exercise band device to perform other exercises such as biceps curls and overhead shoulder press and realized by doing so that his device could be used for exercising many different muscle groups.

18.     Walker noticed that the initial broomstick exercise band devise was uncomfortable when performing exercises since it was uncomfortable when the flat broomstick was resting on his neck so he came up with idea that the device would be much more comfortable on his neck if the broomstick was slightly curved rather than straight.

19.     Walker continued to improve the original design of the exercise device, and, by December 9, 2000, Walker had created a basic drawing of his invention. Walker then chose the name Twister Sport for his device which he hoped to manufacture and sell.

20.     The next step Walker took was to find an engineer who would produce a prototype of his device so he could attempt to patent his device. On May 9, 2011 Walker signed a Confidential Disclosure Agreement with James Rasmusson. Mr. Rasmusson is the president of

the engineer and manufacturing firm, Retronix, Inc. Retronix made the prototype of Walker's invention. The cost of the prototype was $3,500.00.

21.     Walker recognized the need for additional units in order to facilitate the production of an advertising video he could use to help sell his inventive exercise device. Retronix, Inc. suggested to Walker that Frank Wally could produce additional prototypes as he was less expensive than Retronix, Inc.  Walker hired Mr. Wally to manufacture twenty (20) prototypes of Walker's invention for $8,000.00.  Walker paid $2,000.00 in advance then Walker paid $6,000.00 on November 15, 2002.

22.     On September 26, 2002, Walker filed a patent application entitled, "Device for Exercising Abdominal Muscles" directed to an invention for exercising human abdominal muscles. The application issued as U.S. Patent No. 7,090,627 on August 15, 2006 with fourteen (14) claims, including device and method claims.  Furthermore, Plaintiff manufactured, marketed, and sold a product that embodied the invention of U.S. Patent No. 7,090,627. Plaintiff's product that embodied the invention has proper patent markings, thereby providing proper notice to the public and Defendants.

23.     In an effort to commercialize the invention, Walker used the twenty (20) Prototypes to create an infomercial with Mark Fukai of 3 River Films of Denver, Colorado for a cost of approximately $50,000.00. Walker has paid $40,000.00 of the $50,000.00 bill to date.

24.     In order to air the infomercial on television, Walker decided that he needed to stock enough Twister Sport product to be able to fulfill purchase orders he understood that would be the result of airing the infomercial.  On information and belief, other than Defendants' product which is an embodiment of Plaintiff's product of which is complained herein, no other company markets or sells a product similar to Plaintiff's product that embody the U.S. Patent No.

7,090,627. As such, Plaintiff's products embodying the U.S. Patent No. 7,090,627 have a unique trade dress. Plaintiff's goods have come to be well known and accepted by the purchasing public in connection with its unique trade dress which serves to distinguish its goods from the goods of others. Incorporating the invention of U.S. Patent No. 7,090,627, Plaintiff's products have a unique appearance which is readily identified with Plaintiff.

25. In 2002, Brett Beck put Walker in contact with Frank Wang of Gymmax Co., Ltd. a manufacturer in Taiwan with whom Mr. Beck had already successfully worked. Walker and Mr. Beck traveled to Taiwan to meet with Mr. Wang and discuss manufacturing commercially relevant numbers of Walker's Twister Sport device.

26. Walker chose the best components from the Retronix, Inc. and the Wally prototypes and sent them to Gymmax. Plaintiff wished to create goodwill and a valuable reputation under its unique trade dress. Plaintiff believed that the maintenance of high standards of quality and excellence for its goods would contribute to this valuable goodwill and reputation.

27. Gymmax manufactured one prototype of the Twister Sport device, but it not meet Walker's specifications regarding the curved portion of the neck piece. Walker next sent a drawing to Wang at Gymmax to further describe the specifications of the neck portion.

28. On March 3, 2004, Gymmax quoted Walker a price of $9.30 per unit for five thousand (5000) Twister Sport sets. On March 8, 2004, Gymmax quoted $5,500.00 for two tooling charges that were necessary for Gymmax to mass produce Walker's Twister Sport.

29. In 2004 Walker attempted to promote the Twister Sport himself. He formed a company, Nu Era Fitness, LLC, developed a business plan, contacted advertisers, took promotional photographs of the product and of models using the product, and established the Twister Sport Website.

30. On March 29, 2005, Nu Era Fitness received its first request for a Twister Sport from a potential customer. Nu Era Fitness was unable to fill the order because Walker had not been able to start the manufacture of the Twister Sport due to lack of funds for the tooling.

31. On April 15, 2005, Nu Era Fitness submitted and Twister Sport advertisement to Denver based 5280 Magazine. Potential customers contacted Nu Era Fitness in response to this advertisement in an attempt to buy the Twister Sport.

32. Walker sought help in marketing his product. Walker was introduced to Thomas Cheng of Direct Response Holdings, LLC by Darren Fisher of Icon Media, Inc. Direct Response Holdings is a direct response marketing company. On August 23, 2005, Walker and Direct Response Holdings executed a license agreement. Under the agreement, Walker sought and obtained terms such that he would have someone other than himself do the majority of the work in manufacturing and selling the product. Walker received a fee up front and would receive a monthly payment for a period of time prior to sales achieving modest levels then he would receive 35-40% of the profits from sales of the product. According to the agreement, DRH was to manage the business and operations of the Twister Sport product, maintain the website for ordering the product, and advertise, promote, market, and sell the Twister Sport.

33. On November 8, 2005, Cheng terminated the agreement due to financial difficulties. Walker decided to attempt to find a new investor due to the termination.

34. On November 8, 2005, Gymmax informed Walker that the new quote for manufacturing the Twister Sport would be $15.00 per unit as opposed to the $9.30 per unit quoted on March 3, 2004.

35. In 2007 a friend of Walker's contacted him about a product her mother purchased from the Home Shopping Network bearing Tony Little's name. Walker was alarmed by how

9

similar the friend's description of the HSN product sounded to his patented invention. The Tony Little product, called the Easy Shaper, was at that time being sold over the Internet at http://www.tonylittle.com and via television infomercials. Furthermore, on information and belief, Defendants have marketed and sold and are currently marketing and selling products, such as Plaintiff's invention, that embody the invention of U.S. Patent No. 7,090,627.

36. On information and belief, Defendants have deliberately and intentionally continued to sell such product without any license or authority from Plaintiff. Such behavior by Defendants is outrageous because Defendants had full knowledge – both actual and constructive – of Plaintiff's invention of U.S. Patent No. 7,090,627 and Plaintiff's rights therein but deliberately and intentionally chose to disregard Plaintiff's rights in U.S. Patent No. 7,090,627 by manufacturing and/or selling products embodying the U.S. Patent No. 7,090,627 without approval or authority from Plaintiff.

37. In interstate commerce and within this District, Defendants have offered to sell, sold and are selling products that infringe the U.S. Patent No. 7,090,627, thereby causing harm to Plaintiff. Upon information and belief, Defendants knowingly and intentionally sold and continue to sell the infringing products.

38. Plaintiff has sold products bearing the design claimed in U.S. Patent No. 7,090,627. As contemplated by the Patent Act, 35 U.S.C. § 287, Plaintiff has provided notice of its U.S. Patent No. 7,090,627 by marking the patent number on Plaintiff's products embodying the patented design since on or about the time the United States Patent & Trademark Office issued the U.S. Patent No. 7,090,627 and Plaintiff began selling said products to the public.

39. Defendants' infringement of U.S. Patent No. 7,090,627 has been and continues to be intentional and willful.

40. Defendant Fitness Quest has sold, and currently sells, and offers to sell the Tony Little Easy Shaper on its website http://www.fitnessquest.com.

41. Defendant HSN has sold, and currently sells, and offers to sell the Tony Little Easy Shaper (hereinafter "Easy Shaper") on its website http://www.hsn.com.

42. Defendant Walgreens has sold, and currently sells, and offers to sell the Tony Little Easy Shaper at its various stores and on its website for the price of $59.99.

43. Defendant Wal-Mart has sold, and currently sells, and offers to sell the Tony Little Easy Shaper at its various stores.

44. Defendant Health International Corporation has sold, and currently sells, and offers to sell the Tony Little Easy Shaper at its various stores.

45. Defendant Meijer has sold, and currently sells, and offers to sell the Tony Little Easy Shaper at its various stores.

46. Defendant Fingerhut has sold, and currently sells and offers to sell the Tony Little Easy Shaper at its various stores.

47. Defendant HSN Interactive LLC has sold, and currently sells, and offers to sell the Tony Little Easy Shaper at its sites.

48. Defendant Rogers Broadcasting Limited dba The Shopping Channel has sold, and currently sells, and offers to sell the tony Little Easy Shaper at its sites.

49. The Easy Shaper is a device that aids a user is exercising their abdominal muscles.

50. The Easy Shaper has an elongated rigid member that has an arcuate portion configured to accommodate a back portion of a user's neck.

51. The Easy Shaper has two extendible resistance members, with one end of each extendible resistance member being attached to an elongated rigid member.

52. The Easy Shaper has extendible resistance members adapted such that a user's foot can hold one end of the resistance member in association with the user's foot.

53. The Easy Shaper has two elastic members that comprise an elastic strap or band that can be lengthened or shortened, with the shortening of the elastic element providing a preload existing in the elastic members even when the user is in a rest position.

54. The Easy Shaper has elastic members that are adjustable so that a user may adjust the intensity of an exercise by either lengthening or shortening the static length of the elastic member. When a user rotates the rigid member resting on his/her neck, such rotational movement causes a change in extension of the extendible resistance member and the extendible resistance member exerts a source on the rigid member opposing the change in extension.

55. The Easy Shaper has extendible resistance members that are adjustable to vary the length of the extendible member and the degree of resistance to changes in extension exhibited by the extendible member.

56. The moment of inertia exerted by the rigid member of the Easy Shaper on the upper body of a user, remains substantially constant as the resistance to changes in extension of the extensible resistance member is varied. The Easy Shaper includes a rigid member that comprises two or more separable sections that may be assembled to form an elongated rigid member.

57. The Easy Shaper has a mass of less than 5 kg.

58. The Easy Shaper has bands of material that include elastic material.

59. The Easy Shaper has a rigid elongated member that extends across the shoulders

of a user and protrudes beyond each shoulder such that at least one of a user's hands may hold the rigid member in place across the shoulders behind a user's neck.

60. The Easy Shaper has an anchoring element designed and configured to be held by the weight of the user.

61. The Easy Shaper has an anchoring element that is designed and configured to be anchored by a portion of the user's lower body.

62. The Easy Shaper has an anchoring element designed to engage at least one of the user's feet.

63. The Easy Shaper has an extendible resistance member that includes a non-elastic and an elastic element.

## IV. FIRST CLAIM FOR RELIEF

64. Walker hereby incorporates by reference paragraphs 1 through 63 as though fully set for the above.

65. Walker owns the '627 patent which was duly and legally issued by the United States patent and Trademark Office.

66. Defendants have infringed and/or induced infringement of one or more claims of the '627 patent directly and/or indirectly in violation of 35 U.S.C. §271 by making, using, selling and/or offering for sale the Tony Little Easy Shaper in the United States.

67. Pursuant to 35 U.S.C. § 284, Walker is entitled to damages for Defendants' infringement.

68. Defendants infringement of the '627 patent was will and in wanton disregard for Walker's patent rights.

69. Defendants' continued actions, after notification of Walker's patent rights, constitute objective recklessness and/or willful and infringing conduct.

## V.    PRAYER FOR RELIEF

WHEREFORE Walker prays for judgment in his favor and against Defendants as follows:

a.    that Defendants, its officers, directors, agents, servants, employees, privies, representatives, attorneys, parent and subsidiary corporations or other related entities, successors and assigns, and all persons in active concert or participation with any of them, be permanently enjoined from directly or indirectly infringing, inducing others to infringe and/or contributing to the infringement of the '627 patent;

b.    that Defendants be required to provide an accounting of damages resulting from Defendants' infringement of the '627 patent;

c.    that Walker be awarded damages in an amount to be determined at trial for all infringing activities which are at least a reasonable royalty;

d.    that Walker be awarded treble damages by reason of the willful, wanton, and deliberate nature of Defendants' infringement pursuant to 35 U.S.C. §284;

e.    that Walker be awarded punitive damages;

f.    that Walker be awarded his pre-judgment and post-judgment interest;

g.    that Walker be awarded costs and expenses of suit, including expert witness fess;

h.    that Walker be awarded his attorney fees as that is an exceptional case pursuant to 35 U.S.C. § 285;

i.    that Defendants be ordered to deliver to Walker, for destruction at Walker's option, all products that infringe the patent in suit;

j.    that Defendants be required to account for all gains, profits, advantages, and unjust enrichment derived form its violations of law; and,

k.      that Walker be awarded other and further relief as the Court deems appropriate and just.

## VI.     JURY DEMAND

Walker hereby requests a jury trial on all issues so triable.

Dated this 1st day of March, 2013.

                                  FURTADO LAW PC

                                  */s/ David J. Furtado*
                                  David J. Furtado
                                  Attorney for Plaintiff Walker